Good morning, Your Honors. Aloha, welcome to Hawaii. Thank you for traveling all the way to our school here today. I am a 1988, I'm sorry, 1998 alum of this school. And I also, on behalf of my school, welcome you here. I'm Gordon Yang. I represent Mrs. Kim K. Huynh and Mr. Sang Van Huynh. So, a double win for Huynh Huynh, her husband and wife. We're hoping for a double win here today. I'd like to reserve two to three minutes for rebuttal. And also, in the first part of my presentation, discuss jurisdiction, then Mrs. Huynh's case, and then Mr. Huynh's case. Jurisdiction here has been agreed upon by respondents, admitting that the Soon case allows for jurisdiction of the petition. In the government's brief, they rely on the Rendon case to say that the exhaustion doctrine precludes this court from reviewing the case, and that it, in effect, trumps all of the other cases that, the four cases that the court asked the parties to brief recently. However, Rendon is highly distinguishable and does not apply to this case at all. This court does have jurisdiction. The other four cases do apply, and I hope to... Let's assume we have jurisdiction, just at the heart of the case. At least Mrs. Rendon. Let's talk about her. Is that right? Yes, Your Honor. Is that correct? That's fine. Okay, so she was found removable because she'd committed a crime of moral purpose, correct? Yes, Your Honor. That was the IG's finding. That was the IG's finding. Well, you don't dispute she was convicted of transferring Soon's case. That is correct. She has two convictions, one under 18 U.S.C. 371, involving a conspiracy, which does not identify or specify an amount that would have been taken from the victim, and it also does not necessarily require finding a fraud. Let's talk about 2024, then. That, too, Your Honor, does not specify a particular amount of loss. Actually, if you take a very close look at the statute, it does involve some monetary amounts, but those monetary amounts go to the value of the full statute. When you talk about amounts, are you talking about aggravated felonies? Are you talking about crime involving moral turpitude? There's a difference. Yes, Your Honor. So the crime involving moral turpitude, my understanding was those crimes were alleged as a basis for finding her removable. Yes, Your Honor. And the aggravated felony was relied upon as a basis for denying relief. Okay. Yes, Your Honor. Is that right? Is that how it works? Yes, but in discussing her conviction for the 2024 B conviction, the trafficking offense, the amount does go to the aggravated felon discussion. But I guess it's also— Why isn't 2024 a crime involving moral turpitude? Not necessarily, Your Honor. Under the Navarro-Lopez case— Why isn't it? You know, I think Judge Pregerson had it very correct in his discussion within the Navarro-Lopez case in which he said, you know, we need to distinguish crimes involving moral turpitude as ones that are very serious, and he went on specifically to deal with cases involving maybe like a Wall Street case involving millions of dollars of loss to the large population of the U.S. to someone who was trying to get food on the table. And here, really, when you look at the plea agreement, she maybe made about $3,000-somewhat. Okay. And this occurred after her husband had lost his job, is on medical disability, and they live in a highly—they live on Puoling. It's a famous street in Honolulu. It's been an economically distressed area. And, I mean, Judge Pregerson talked about, you know, that type of situation as not involving moral turpitude because they needed to survive. And also, as she informed the court, you know, all she thought she was doing was trading money for money. She didn't know it was wrong. And if you think about it, there really is nothing per se intrinsically wrong with trading money for money. There are forms of trading money for money, which could— So, again, your argument would be that under 2024b, there was—it doesn't require fraud. It does not, on its face, categorically require fraud. It does not mention the word fraud within the statute. If you look at her conviction separately, it is extremely difficult to find that she is convicted of a crime involving moral turpitude, categorically. So then that would get it. So then if she's not involved—if it's not a crime involving moral turpitude, then she's eligible for a release. Is that right? Well, actually, she's already—she was admitted as a lawful permanent resident in 1989, and she was returning from a brief trip overseas when she was placed into proceedings. So if you find that she is not convicted of a crime involving moral turpitude, we need not address whether she is an aggravated felon and need not address whether— That would terminate everything. That would terminate everything. How about 371? Did the IJA address 371? She basically, I believe, noted in her decision that crimes involving fraud or theft are almost always crimes involving moral turpitude. And she did not engage in the type of evaluation required by Navarro-Lopez. For 371? For both, actually, correct. Does her decision even mention 371? I believe it does, Your Honor. Okay. The other event that I want to make the Court aware of talking about relief is that a superseding event has occurred in that their daughter's immigrant visa petitions have become approved, and this is the new avenue of relief, which was not available to them at the time of their removal proceedings. I'm not intimately involved in the whole situation, but how is that possible? Well, her daughter was not 21 at the time of the immigration proceeding, before the immigration judge. She turned 21, which is a requirement to file for an immigrant visa for a parent. Their daughter and son are U.S. citizens, and so it does take some time before the Immigration Service gets around to adjudicating these things. It took some time, but it was now approved. But now you have a finding by an immigration judge that she's been convicted of an aggravated felony. That's correct, Your Honor. So how does that work with the I-130? We would be applying for adjustment of status. I understand that it's not a complete bar to adjustment, and that the immigration judge could look at that. Assuming that she had been convicted of a crime involving moral servitude, was she convicted of a crime that was an aggravated felony? No, Your Honor. Under Navarro-Lopez and the Kawashima case, she is not convicted of an aggravated felony. Because, as I was saying earlier, the amount is not specified within 371 or 2024. There is no $10,000 threshold amount. And so by strictly applying precedent, you must find that she is not an aggravated felony, and therefore she is eligible for cancellation of removal through 12-H and asylum. Okay. Before going on, I'd really like to point out that why Rendon is not applicable, it kind of touches upon the husband's case here. Her husband was a captain in the South Vietnamese Army. That basically is our side. That's why the U.S. went to Vietnam to help the South Vietnamese. Now, in the wife's case, their prior attorney applied for asylum, withholding of removal, and later relief under the Convention Against Torture, on the basis that she is the wife of the former captain of the South Vietnam Army. And yet, for some reason, prior counsel did not submit an application for asylum and related relief for the husband. That's captain ineffective assistance of counsel. Has that been raised before now? No. And so how did we get to talk about it? Because of the Smith case, Your Honor. What does Smith say that says that, on appeal now, I can talk about ineffective assistance of counsel? The Smith case basically says that petitioner's petition, which was filed June 10, 2005, was within the 30-day period of filing post Real ID Act of 2005. Right. Now, the Real ID Act of 2005 took away petitioner's right to file a petition for writ of habeas corpus in the district courts and essentially channeled all actions to this circuit court for people residing in Hawaii, not the Tigers. But if we go to that case, he didn't file any place. He didn't file. I mean, the first time we hear anything is now. He didn't file in the district court, and he didn't move to reopen the case before the BIA, which would seem to me to be what he should have done given those cases. So how do I get it? Oh, Mr. Wynn and Mrs. Wynn did file appeals from the immigration judge's decisions to the Board of Immigration Appeals, actually. However, they were not. But ineffective assistance of counsel is not great. Oh, they did not face that issue. Well, it was the prior counsel handling that prior appeal to the BIA, so I doubt that she would have claimed that she herself was ineffective. But nonetheless, then somebody gets a hold of it, they can reopen before the BIA, which is what they should have done given the Smith case, it seems. Well, that would have been outside of the time limits. There is no action of right after expiration of time. They are barred from filing a motion to reopen. I've got a motion for changed circumstances on the basis of ineffective assistance of counsel. It can get you over that bar. I'm not certain about that. At the point in time, I guess to be truthful, what happened was as soon as petitioners found out about the BIA's decision, they were basically picked up by Immigration Service, and that's when they learned about it. We filed the petition for review immediately, I mean within a matter of days of learning. And then basically it's the same case, not the Smith case I misspoke earlier. What it says is that the reason why this court has jurisdiction now, it's akin to a habeas action now where petitioners could raise this claim of ineffective assistance of counsel to the courts. They could raise new challenges in this petition because Singh recognizes that Real ID gave this court the power to handle it. I'm running low on time. Well, my worry about the husband is that he didn't challenge the conviction for crime involving moral turpitude, either in the notice of appeal or in the briefing to the BIA. He didn't deny waiver of excludability or inadmissibility. That's correct, Your Honor. I'm not sure. As I understood it, he pled guilty to the offense in 1991 prior to the enactment of the 2 I's RIRI. I'm new and I'm from Idaho, so I always talk about that kind of stuff. At the time, at that time, he was eligible for discretionary relief through cancellation of removal. And to so see, Your Honor. Yes. So I guess I don't understand how the IJ could have incorrectly applied the stop time rule. And here I am, he didn't do anything about his former assistance to counsel until now. Well, it was because he was with his former counsel up until he was picked up by immigration, basically. And then they decided they'd better consult, get a second opinion, basically. And so when I got involved in a case, it just didn't sit well in my gut, Your Honor, that silence fought for the wife but not for the content. This is a recurrent problem that we have also, that we find families that are separated because of the operation of our laws. But sometimes it happens. We've got to find a way around somehow here. I'm not sure we're finding it. There is one more aspect about Rendon as to why it does not apply. At that case, the BIA had made its decision in late 2005, outside of the 30-day period post real ID. So that case really does not address this unique fact pattern that we have before us, that petitioners filed their petition within that 30-day window between May 11 and June 11, 2005. And so you do have original jurisdiction, I believe, to handle new claims. Okay. Thank you. Thank you. Good morning. My name is Jesse Vless. I represent the Attorney General of the United States. I'd like to pick up where my adversary left off. Singh did not say that we're going to wipe the slate clean and allow unexhausted claims to be reviewed before this court or any other. What Singh talked about is the 30-day time limit from which to file an appeal from the board to this court, petition for review. That's all it said. And we don't dispute that the petitions in this case were timely. The issue really becomes what issues were preserved for this court to review. I'm beginning with Ms. Wynn. She did exhaust her claim with regard to removability. Okay. No one disputes that. Our position is under Navarro. And, again, my adversary spoke about Judge Pregerson. Judge Pregerson's recitation of what constitutes a fraud, crime involving moral turpitude, was not adopted by the majority panel. They wrote separately and upheld what they had understood under Jordan's Supreme Court case, that the universal rule is a crime involving fraud is always a crime involving moral turpitude. Well, but it has to be fraud. It has to be a crime that truly involves fraud. Right. And not just one that's labeled fraud. Right. Exactly. In trafficking, in food stamps. And keep in mind, in this case, removability does not hinge on a conviction, in this case, under INA Section 212. You can admit to committing the acts. And, in this case, what is admitted in the plea agreement by Ms. Wynn is I trafficked in food stamps. Now, I know the magic word is fraud isn't there, but if you sell. Well, what did she mean by trafficking? She took food stamps that she purchased from an undercover agent at a discount rate and sold them for profit. Much like you would you buy drugs from a drug dealer and that you'd sell them on the street for profit. Well, food stamps aren't contraband. They're contraband when you use them unlawfully. Correct? I mean, they're not contraband in the sense that you're not selling drugs. But that's the common. When we discuss trafficking in most cases, it does constitute. We're talking about unlawful controlled substances in most cases. Here, just the commodity was food stamps. I mean, I see no reason to disagree. Who's defrauding? It's defrauding the federal government. How? Because when those people that they were sold the food stamps, they're merchants. They redeem them for face value. Well, she wasn't a merchant, right? No, but she was selling them for profit. Right? So she's transferring. She's making money. So, you know, you look for fraud. The requirement of fraud, you look at the language of the statute. And if you look at 2024B1, it says, whoever knowingly uses, transfers, acquires, alters, or possesses coupons, authorization cards, or access devices in any manner contrary to the statute, you know, guilty of a felony. So where's – how do I get to fraud? The government wouldn't have to prove fraud there that she intended to defraud. Exactly, but for removability purposes. We're not talking about her state conviction. Her conviction was not necessary. I'm talking about her federal conviction for violating 2024. Exactly. And I want to know where, as Judge Soter said, where is fraud an element of that offense? Fraud is not an element of that offense, but when you look – So there's not going to be a crime involving moral turpitude. Because she admitted to committing the acts which constitute the essential elements of a crime involving moral turpitude. Her conviction is unnecessary. That's not the way I understand it was charged in the notice to appear. That's not the way – but if you look at the immigration judge's decision, he relies on what was – what she admitted to committing underlying that conviction. Well, if she – I mean, if you go to the plea agreement, all she does is she admits that she violated the statute. And she trafficked in food stamps. Well, that – well, she sold food stamps. She uses the word trafficked. I trafficked food stamps. And so if you – and someone said – and so, I mean, you know, we can have an informal discussion. You know, we can have a discussion about this. But she made money by selling food stamps. And as a result, she defrauded the government. And, of course, she had an also – she had a conviction. And she had a conviction. And she admits over and over in her briefs filed to the board, the immigration judge, and to this court, I defrauded the government, 18 – 18 U.S.C. 1371. I sold money for profit. Why? I needed money. Okay. That renders you removable. She admitted it consistently – consistently in her affidavit that she filed to the board. I sold food stamps for your profit. You mean 18 U.S.C. 371. Right. Not 13 – Yes. Excuse me. 371. 371 is a conspiracy. Right. Well, conspiracy is for the substantive offense. And all she admitted in the plea agreement was that she had violated 371. The conspiracy was to traffic in food stamps in violation of 2024B. But she increasingly – but she admits before the board that what I did was I defrauded the government by selling food stamps for profit. I don't know about that. Okay. I think we're kind of going – Let me just ask – let me put it to you this way. How about conspiracy? Is conspiracy itself a crime involving moral interpretation? If you conspire to defraud the government, yes. Because – So you have to look at the underlying offense. Well, for 212 purposes, you would. But unless – but you can also look at her admissions, you know, under the record of conviction. And this is why in Judge Bea's – I guess it was a concurrence of his dissent in Navarro, he spoke about this, how difficult it is because there's no federal crime. What we're essentially doing is you have to look at what has been admitted in these federal or state court proceedings, and you have to make them into this amorphous thing we call a crime involving moral interpretation. So what we have here is we know we have someone who sold food stamps for profit. I mean, it's admitted. It's admitted. I'm not making this up. It's admitted in the record. And guilty. Yeah. To transferring food stamps? But she uses the word defraud. Admittedly. I mean, it's – We're back to the – And I would like to point out, and assuming you would uphold the removability of the finding against Ms. Wynn, before the board she did not preserve her claims for relief for purposes of cancellation, asylum, or relief under INA 212H. While she refers to aggravated – I wasn't thinking of an aggravated felony because I was not sentenced to a year. That was her claim. That has no bearing on an aggravated felony under MI. And the reason it's critical is because the arguments that have now been raised, the board could not have anticipated. And so the argument is that she did not preserve her claims for relief. Let's assume that she did. Well, Kawashima – the difference in this case is that she's applying for relief, so the burden would be on Ms. Wynn to prove that she had not been convicted of an aggravated felony. Now, Kawashima did not address how a petitioner would go about meeting its burden. Would it be held to the reverse standard? Meaning, would she have to come up with some evidence showing that the loss was not $10,000? And would that Taylor-Shepard categorical modified approach work in those circumstances? Where does she have the burden? It's relief. Cancellation. Congress has said and codified in the Real Idea that if you're going to apply for relief, it's your burden, not on the government. Much like a mitigating exception would work in a criminal case for a sentence. Well, the statute itself doesn't require $10,000. Right. And if you – the statute doesn't. So if you're going to – it would take this court applying Kawashima where the burden is on the petitioner, and then if I'm assuming where you're going, saying, well, she meets that burden merely by showing that there's no loss requirement in the statute of conditions. That's correct. That's exactly what you would say. That's what Kawashima says. But we're in a different context. And essentially what you do – Why can't she point to Kawashima as meeting her burden of proof or point to the statute? If she exhausted that issue, it would be a great one to make. Well, I assume for purposes of discussion that she exhausted that issue. Right. Right. It's a difficult – We're in a difficult position with Kawashima. Okay. Yeah. All right. What about him? Well, again, if we're looking at this bifurcated thing called immigration law, one problem being removability, another one relief. He does not contest before the board, doesn't nowhere mention that he is not removed. So there's no jurisdiction before this court to address that issue here in the first instance. Regarding the relief, the relief was denied as a matter of discretion by the immigration judge, which precludes this court from reviewing it unless he's raised a question of law or constitutional claim. None has been raised here. And regarding the ineffective assistance of counsel, this court has never held that a court can – that a petitioner can surpass, even if he has the same attorney, can then raise an ineffective assistance claim here. The proper remedy is to file a motion to reopen, which you could have done, as this court well knows, can be done at the same time a petition for review is pending before this court. And that's what we would argue would be the appropriate remedy. Now, I want to touch on just one more thing just to clarify. Just wait. So he had no problem at one time with timeliness for the petition to reopen? Yeah. There's a 90-day requirement from the board's decision. And the board's decision, his case was February 5th. Yeah. So we would have to file within 90 days. Now, the board always has sua sponte authority and can get DHS to file a joint motion to reopen, especially where the circumstances are compelling. That's not a regulatory term. But certainly circumstances like, I'm not saying here, but where someone has a claim for relief and it's certainly ineffective is on its face. I'm not saying it was in this case. That would be an appropriate remedy. But you have to at least allow the administrative agency responsible an opportunity to address that. And then you can, again, file a petition for review. And, of course, this court does that all the time. Files ineffective assistance to counsel, saying the board should have reopened. It did not. And then we'd be here on a consolidated petition. I just want to touch on one more thing, which is the I-130 that's been approved. They wouldn't be prima facie eligible for adjustment of status because that requires someone to be admissible. They now have two final orders of removal showing that they are not admissible, so they're not eligible for adjustment of status. I thank you for your time. Thank you. Eric, please. Thank you, Your Honors. Regarding Judge Smith, your concern, how does the court get jurisdiction over the new claims? Why is it like a habeas petition? I think counsel is correct in saying that it did not specifically wipe the slate clean, but what it did was go into the legal reasoning which supports petitioner's claims. Think of this question. After Real ID, where could petitioners have gone as a course of right? They had no other forum but to come to the Ninth Circuit. Well, my worry is, is what counsel suggested, which is the reason for my question, I don't find any case law that says you bring it here. The only case law I have is that you've got to either start with the BIA with a motion to reopen, or you've got no place to go. Okay. Well, the exhaustion doctrine does only apply to actions as of right, and at that point in time when they filed their petition for review, they did not have a motion to reopen as a matter of right. The other discrepancy I'd like to point out is this notion of trafficking in food stamps. She did not actually sell, buy and sell, buy and sell the food stamps. If you look at the agreement, she was caught buying food stamps from an undercover agent, so she wasn't selling them. She might have only used them. Actually, she probably didn't even have a chance to use them because she was caught buying them. It's different from the normal conception of trafficking. I think the court seems to be headed down the right track as far as evaluating under de novo review whether the IJ properly determined that Mrs. Wynn is an aggravated felon or not. I think that is the proper way to look at this. The other quick mention would be for Wynn, Mr. Wynn, his conviction for terroristic threatening is not a crime involving moral turpitude categorically. If you look at that statute, you know, a threat to property. It would be a nice argument if you had made it before now. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Center for Food Safety versus the biotechnology industry in Schaefer.
judges: Schroeder, Paez, N. R. Smith